# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEBORAH KANNER EBNER | ) |
| | ) |
| Appellant, | ) Case No. 15-cv-9594 |
| | ) |
| v. | ) Judge Sharon Johnson Coleman |
| | ) |
| ELIZABETH H. BEATTY and | ) |
| EMILY M. BEATTY, | ) |
| | ) |
| Appellees. | ) |

## MEMORANDUM OPINION AND ORDER

Deborah Kanner Ebner, trustee for the bankruptcy estate of Jacqueline Beatty, filed an adversary proceeding against Jacqueline's daughters, Elizabeth Beatty and Emily Beatty, seeking to avoid and recover the allegedly fraudulent transfer of a death benefit that the daughters received from the retirement plan of their late father, Judge Joseph Beatty. Ebner now appeals the Bankruptcy Court's denial of her motion for summary judgment and grant of Elizabeth and Emily's cross-motion for summary judgment. For the reasons set forth below, the Bankruptcy Court's ruling is affirmed in part and reversed in part, and this case is remanded for further proceedings consistent with this opinion.

**Background**

The following are the uncontested facts as they were set forth by the Bankruptcy Court. Jacqueline was married for many years to Judge Joseph Beatty, who became an Illinois state court judge in 1983. The marriage was dissolved in 2009 by the Circuit Court of Rock Island County, which entered a Supplemental Judgment of Dissolution providing for the division of the parties'

1

assets. In pertinent part, that Judgment provided that Jacqueline "is awarded a widow's annuity to the petitioner's judicial pension, which petitioner has been advised is approximately $63,000." [1]

A number of years before the divorce, Judge Beatty had designated Elizabeth and Emily as the beneficiaries of the "refund of survivor annuity contributions payable" ("the death benefit") under his retirement plan. Judge Beatty did not alter this beneficiary designation before his death and no Court order altering the disposition of the death benefit was sent to the retirement fund administrator prior to Judge Beatty's death. Soon after Judge Beatty died, an attorney representing his estate sent a letter to the Judges' Retirement System requesting that the death benefit be paid to Elizabeth and Emily. In that letter, the attorney disclosed the terms of the divorce judgment but stated that the required order to transfer an interest in the pension was never entered. The Judges' Retirement System agreed and paid the death benefit to Elizabeth and Emily in equal portions.

Jacqueline testified that she was not represented by an attorney during the divorce proceeding and that she did not participate in any discussion about the division of marital assets. She did contact the Illinois Judges' Retirement System after Judge Beatty's death, but she took no further action after being informed that she was not entitled to the benefit because the proper documentation had not been filed. Jacqueline was insolvent when the Judges' Retirement System issued the checks to Elizabeth and Emily. She filed for chapter 7 bankruptcy in October 2013, approximately six months after Judge Beatty's death.

The trustee subsequently filed this adversary proceeding against Elizabeth and Emily, asserting that their payments from the Judges' Retirement System constituted fraudulent transfers under 11 U.S.C. §§ 544, 548, and 550. The trustee moved for summary judgment, and Elizabeth and Emily filed a cross-motion for summary judgment. In a lengthy and detailed ruling, the Bankruptcy

---

[1] The bankruptcy court interpreted the Circuit Court's reference to a "widow's annuity" as referencing the refund of Judge Beatty's survivor's annuity, which would not have been payable given that he was unmarried and that his children were over the age of entitlement. (Dkt. 3-4, pp. 14-15). On appeal, both parties appear to accept this interpretation.

2

Court denied the trustee's motion and granted Elizabeth and Emily's motion. The trustee now appeals from that ruling.

**Legal Standard**

District courts have jurisdiction over appeals from final orders of bankruptcy courts pursuant to 28 U.S.C. § 158(a)(1). A bankruptcy court's legal conclusions and mixed questions of law and fact are reviewed de novo. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004). Factual findings are reviewed for clear error. Fed. R. Bankr. P. 8013.

**Discussion**

Prior to 1999, no mechanism existed by which an Illinois Domestic Relations court could directly reassign the payment of pension benefits to a third party. Rather, domestic relations courts were limited to ordering that pension recipients, upon receiving their pension benefits, personally pay some or all of those benefits to their former spouse. *See, e.g., In re Marriage of Roehn*, 576 N.E.2d 560, 563, 216 Ill.App.3d 891, 895 (1991).

The Qualified Illinois Domestic Relations Orders statute (the "QILDRO statute"), which became effective in 1999, provides a statutory avenue by which an Illinois domestic relations court may order that all or part of a pension member's benefits, including a death benefit otherwise payable to a designated beneficiary, be paid instead by the retirement system to an alternate payee. These orders must take the form of a Qualified Illinois Domestic Relations Order (QILDRO). To qualify as a QILDRO, an order must contain the name, mailing address, and social security number of both the member and the alternate payee, must identify the court issuing the order and the retirement system to which the order is directed, must specify each benefit to which it applies and the amount of the benefit to be paid to the alternate payee, and must state when the order will take effect. 40 ILCS 5-1/119(c). A QILDRO may not be implemented until a certified copy of it has been received by the retirement system. 40 ILCS 5/1-119(d). Moreover, the QILDRO statute

requires that, in accordance with Article XII, Section 5 of the Illinois Constitution,[2] a QILDRO involving a member who began participating in the retirement system before 1999 must be accompanied by the written consent of the member, specifying the retirement system, court case number, and names and social security numbers of the member and the alternate payee. 40 ILCS 5/1-119(m).

Here, it is undisputed that the supplemental judgment of dissolution did not constitute a QILDRO. It is further undisputed that Judge Beatty never executed a written consent for the transfer of his survivor's benefits to Jacqueline. The bankruptcy court accordingly held that under the plain language of the Illinois Constitution and the QILDRO statute, Jacqueline never held an enforceable interest in the death benefit and that a fraudulent transfer did not occur. Having reviewed the applicable caselaw, this Court finds that the bankruptcy court erred in reaching this conclusion.

The Illinois Supreme Court, in *Smithberg v. Illinois Mun. Retirement Fund*, expressly held that a final judgment of dissolution naming an ex-spouse as the recipient of a survivorship benefit created a vested, contingent right to those benefits. 735 N.E.2d 560, 567, 192 Ill.2d 291, 303 (2000). In that case, the pension fund member's second wife, who was the named death benefits beneficiary, filed a declaratory judgment action against the pension fund. The pension fund interpled the member's first wife, who the member had agreed to list as the recipient of his death benefits pursuant to a marital settlement agreement that was incorporated into a judgment of dissolution. On appeal, the Illinois Supreme Court acknowledged the language of Article XIII, Section 5, but noted that that provision served as a guarantee that pension benefits would be determined under a contractual theory and that "retirement benefits have long been presumed to be marital property to the extent

---

[2] Under Article XIII, Section 5 of the Illinois Constitution,"[m]embership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be distinguished or impaired."

4

that the beneficial interest was acquired during the marriage." *Id.* at 567–568, 192 Ill.2d at 303. Death benefits, the Court explained, become a vested right when a judgment of dissolution is rendered final like any other property right created by a judgment of dissolution. *Id.* at 567, 192 Ill.2d at 302. The court further elaborated that:

> To be sure, in many cases pension benefits may constitute one of the most important items of property acquired in a marriage of long duration; in some perhaps, it may be the only asset of any significant value. To deprive a domestic relations court of the power to apportion the value of such a significant marital asset, and enforce that apportionment, would, in many cases, deprive the court of the ability to do justice between the parties. A court's authority to enforce its judgment, equitably apportioning marital assets, surely cannot be subordinate to the whims of one of the parties in the divorce proceeding or defeated by his or her blatant violation of the parties' agreement as incorporated in a judgment of dissolution. As we have demonstrated, courts are not powerless to enforce their judgments.

*Id.* at 586, 192 Ill.2d at 304.

Accordingly, and applying principles of equity including the doctrine of constructive trusts, the supreme court affirmed the entry of summary judgment in favor of the first wife, thereby depriving the second wife of the death benefits to which she was entitled under the pension agreement. Subsequent Illinois Appellate Court decisions have confirmed that the QILDRO statute does not alter *Smithberg's* analysis, because the QILDRO statute "affects only how the property division is executed" and not the trial court's underlying authority to divide marital property. *In re Marriage of Menken*, 778 N.E.2d 281, 284, 334 Ill.App.3d 531, 535 (2002).

In light of the Illinois Supreme Court's reasoning in *Smithberg*, which this Court is bound to follow on matters of Illinois law, it is clear that Jacqueline has an equitable interest in Judge Beatty's death benefits that exists despite the lack of QILDRO or signed consent directing that she directly receive the death benefits. *Rodas v. Seidlin,* 656 F.3d 610, 626 (7th Cir. 2011) ("When interpreting state law, a federal court's task is to determine how the state's highest court would rule."). Although

5

the lack of a QILDRO prevented the Judges' Retirement System from directly paying Jacqueline the death benefit, it has no impact on her ability to petition for the judicial enforcement of the Judgment of Dissolution. This Court therefore finds that the bankruptcy court erred when it granted summary judgment in Emily and Elizabeth's favor.

This Court is not persuaded, however, by the trustee's somewhat conclusory assertion that the bankruptcy estate is therefore entitled to recover the death benefits on summary judgment. Although this Court has held that Jacqueline had an interest in the death benefits, it cannot hold, based on the arguments before it, that Emily and Elizabeth did not have a competing interest in the death benefits or that their receipt of the death benefits constituted a fraudulent transfer.

**Conclusion**

For the foregoing reasons, this Court reverses the bankruptcy court's grant of summary judgment in Elizabeth and Emily's favor, affirms the bankruptcy court's denial of summary judgment in the trustee's favor, and remands this case for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Date: March 8, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge